[No. C073207. Third Dist. Feb. 1, 2017.]

ANDREW G. KALNOKI et al., Plaintiffs and Appellants, v.
FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC, et al.,
Defendants and Respondents.

[Nos. C075062, C079144. Third Dist. Feb. 1, 2017.]

ANDREW G. KALNOKI et al., Plaintiffs and Appellants, v.
WELLS FARGO BANK, N.A., et al., Defendants and Respondents.

28

**COUNSEL**

Andrew G. Kalnoki for Plaintiffs and Appellants.

Law Offices of Glenn H. Wechsler, Glenn H. Wechsler and Natalie Sperry Mandelin for Defendants and Respondents First American Trustee Servicing Solutions, LLC, and First American Title Insurance Company.

Dawe & Christopherson and Dean A. Christopherson for Defendants and Respondents Wells Fargo Bank, N.A., and U.S. Bank National Association.

## Opinion

**HULL, J.**—Plaintiffs Andrew and Kathi Kalnoki (the Kalnokis) appeal from a judgment dismissing their second amended complaint for wrongful foreclosure-related causes of action after the trial court sustained defendants' demurrers without leave to amend (case No. C073207, or the foreclosure appeal). They separately appealed from an order after judgment awarding attorney fees to defendants (case No. C075062, or the attorney fees appeal), and also from an order disbursing funds the Kalnokis deposited with the court under Code of Civil Procedure section 1170.5 to delay the trial in an unlawful detainer action filed against them regarding the residential property at issue here (case No. C079144, or the rental disbursement appeal). We consolidated all three appellate cases for argument and decision.

Finding that the Kalnokis failed to allege a cause of action on any theory, we shall affirm the judgments dismissing the second amended complaint with prejudice. We also conclude the trial court properly awarded attorney fees. We find, however, that the court erred in disbursing to Wells Fargo Bank, N.A., the rental funds on deposit with the court. We therefore reverse the rental disbursement order and order that the funds be returned to the Kalnokis.

### Facts and Proceedings

#### A. The Foreclosure Appeal (Case No. C073207)

Because this case comes to us on demurrer, we accept the truth of material facts properly pleaded in the operative second amended complaint—a 70-page document containing 400 separate paragraphs and incorporating over 30 pages of attached exhibits—but not contentions, deductions, or conclusions of fact or law in that pleading. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 [199 Cal.Rptr.3d 66, 365 P.3d 845] (*Yvanova*).) We may also consider matters subject to judicial notice. (*Ibid.*) Although lengthy, convoluted, and rife with conclusory allegations, the second amended complaint alleges as follows:

In February 2004, the Kalnokis refinanced their home in Carmichael, California (the home or the property), with Wells Fargo Home Mortgage, Inc., by obtaining a $405,000 refinance loan (the loan), which they used for their home and to pay down some existing consumer debt. They allege they were enticed to leave their previous lender by false promises of later being able to easily modify the new adjustable rate loan.

The loan was secured by a deed of trust on the home naming the Kalnokis as the borrower, Wells Fargo Home Mortgage, Inc., as the lender and

beneficiary, and Fidelity National Title Insurance Company as the trustee. The deed of trust was recorded with the Sacramento County Recorder on February 17, 2004.

Under the deed of trust, the Kalnokis "irrevocably grant[ed] and convey[ed] [the property] to Trustee, in trust, with power of sale" in the event they defaulted on the loan. The lender, at its option, had the ability to appoint a successor trustee by an instrument executed and acknowledged by the lender and recorded in the recorder's office in Sacramento County. The lender also had the right to sell the note evidencing the loan or a partial interest in the note together with the deed of trust one or more times without prior notice to the borrower.

In May 2004, Wells Fargo Home Mortgage, Inc., merged with defendant Wells Fargo Bank, N.A. (Wells Fargo). Following the merger, Wells Fargo succeeded to the assets and liabilities of Wells Fargo Home Mortgage, Inc., and the latter entity ceased to exist.

In December 2009, after suffering several personal hardships, the Kalnokis fell behind on their loan payments. In March 2010, the Kalnokis forwarded a check to cover one month's payment, but Wells Fargo declined the check as it was insufficient to bring the account current. The Kalnokis did not make any further mortgage payments.

After defaulting, the Kalnokis applied several times to Wells Fargo to modify their loan. Wells Fargo either lost or failed to process their modification applications. During the modification process, Wells Fargo employees repeatedly told the Kalnokis that their mortgage was owned by EMC Mortgage Corporation and that Wells Fargo was merely the loan servicer.

On March 30, 2010, defendant First American Title Insurance Company (FATCO) as "attorney in fact" for defendant First American LoanStar Trustee Services LLC (Loanstar) executed a notice of default and election to sell (Notice of Default) for the deed of trust. The Notice of Default identified Loanstar "as agent for the current beneficiary" of the deed of trust. Loanstar later changed its name to First American Trustee Servicing Solutions, LLC. For convenience, we shall refer to both entities as Loanstar.

Attached to the Notice of Default was a declaration stating that the requirements of Civil Code section 2923.5 had been met. John Kennerty, identified as the vice-president of loan documentation for Wells Fargo Home Mortgage, executed the declaration on March 24, 2010. The Notice of Default was recorded in Sacramento County on April 2, 2010.

On April 1, 2010, Wells Fargo, through its attorney in fact FATCO, executed a substitution of trustee (Substitution) substituting Loanstar as the

new trustee on the deed of trust. The first page of the Substitution identifies the original beneficiary as Wells Fargo Home Mortgage, Inc. It also identifies Wells Fargo as the present beneficiary. The signature block on the second page includes the following: "Wells Fargo Bank, NA Successor by Merger to Wells Fargo Home Mortgage By First American Title Insurance Company as Attorney in Fact." Like the Notice of Default, the Substitution was recorded in Sacramento County on April 2, 2010.

On June 16, 2010, without the Kalnokis' knowledge, Wells Fargo assigned the deed of trust and the note (the Assignment) to defendant U.S. Bank, N.A. (U.S. Bank), as trustee for the Bear Stearns ARM Grantor Trust, Series 2005-2, a common law trust organized under New York trust Law (Bear Stearns securitized trust). The Bear Stearns securitized trust was governed by a pooling and services agreement that had specific requirements for transferring property into the trust.

FATCO executed the Assignment as attorney in fact for Wells Fargo as the beneficiary under the deed of trust. Wells Fargo is identified in the signature block as "successor by merger to Wells Fargo Home Mortgage, Inc." The Assignment was recorded in Sacramento County on June 21, 2010.

On July 3, 2010, Loanstar as trustee executed a notice of trustee's sale (Notice of Sale) for the Kalnokis' home. The Notice of Sale set a trustee's sale for July 26, 2010, and listed the outstanding balance owed on the loan as $407,839.32. The Notice of Sale was recorded in Sacramento County on July 6, 2010.

Attached to the Notice of Sale was a declaration executed by Marsha Graham that declared the mortgage loan servicer had obtained an exemption from certain statutory time limits for giving notice of the sale. Ms. Graham signed the declaration on June 17, 2009, as an assistant vice-president of Wells Fargo Home Mortgage, Inc.

A nonjudicial foreclosure sale was held on February 22, 2011, and U.S. Bank was the successful bidder. Loanstar as trustee issued a trustee's deed upon sale (Trustee's Deed Upon Sale) to U.S. Bank, which was recorded in the Sacramento County Recorder's Office on March 1, 2011.

The Kalnokis filed this action the day of the trustee's sale to block the foreclosure sale. Three days later, the Kalnokis filed an amended complaint alleging 15 causes of action, including fraud, intentional and negligent infliction of emotional distress, violations of various foreclosure statutes, as well as the Uniform Commercial Code, breach of the implied covenant of good faith and fair dealing, declaratory relief, conspiracy, violations of

California's Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.; Rosenthal Act) and Business and Professions Code section 17200, unjust enrichment and rescission, and for a stay of proceedings. They later substituted U.S. Bank in as a "Doe" defendant.

Following the foreclosure sale, U.S. Bank filed a separate unlawful detainer action against the Kalnokis. The Kalnokis moved to stay the unlawful detainer action or otherwise consolidate it with their wrongful foreclosure case. The court granted the motion to consolidate the two actions, with the wrongful foreclosure action designated as the lead case, on the condition that the Kalnokis deposit damage payments with the court pursuant to Code of Civil Procedure section 1170.5 to delay the trial on the unlawful detainer action while the wrongful foreclosure case was pending. The Kalnokis stipulated to deposit monthly payments of $1,950, which represented the fair market rental value of the property.

Loanstar and FATCO jointly demurred to the amended complaint. Wells Fargo separately filed a demurrer in which U.S. Bank joined. The court first sustained the joint demurrer of Wells Fargo and U.S. Bank with prejudice as to the causes of action based on Civil Code sections 2923.5 and 2923.6 and Uniform Commercial Code section 3-104, stay of proceedings, and violation of the Rosenthal Act. The Kalnokis were given leave to amend all remaining causes of action. The court's ruling on the joint demurrer of Loanstar and FATCO was the same plus it also sustained the demurrer without leave to amend for the breach of the implied covenant of good faith and fair dealing cause of action and allowed the Kalnokis to allege a cause of action under the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.).

In October 2011, the Kalnokis filed their second amended complaint with the deed of trust, Notice of Default, Substitution, Assignment, Notice of Sale, and Trustee's Deed Upon Sale attached as exhibits. The Kalnokis also attached a letter from Wells Fargo rejecting their check for one month's mortgage payment since it was insufficient to bring the default current.

The second amended complaint alleged four fraud causes of action and causes of action for conspiracy, declaratory relief, unjust enrichment, and for violating Business and Professions Code section 17200, Civil Code section 2932.5, and the federal Fair Debt Collection Practices Act. We note that the cause of action for violating the federal Fair Debt Collection Practices Act was removed to federal court, and we need not discuss it further.

The crux of the second amended complaint was that the nonjudicial foreclosure sale was wrongful because the underlying documents, such as the Assignment, Substitution, Notice of Default, Notice of Sale, and Trustee's

Deed Upon Sale, were allegedly fraudulent or otherwise invalid. The Kalnokis also claimed that irregularities in the Assignment to the Bear Stearns securitized trust, which purportedly violated the trust's pooling and servicing agreement, meant that the deed of trust was never properly assigned to U.S. Bank.

Defendants demurred to the second amended complaint, arguing that the pleading failed to state facts sufficient to state any cause of action. Defendants argued Loanstar's acts as trustee were subject to statutory privilege, the foreclosure documents were properly prepared and that any alleged irregularities were not prejudicial, the Kalnokis lacked standing to raise issues regarding the validity of the Assignment to the Bear Stearns securitized trust as they were neither parties to the Assignment nor beneficiaries under the trust, and that the Kalnokis did not tender the delinquent amount owing on the loan. FATCO and Loanstar asked the court to judicially notice the deed of trust, Substitution, Notice of Default, Assignment, Notice of Sale, Trustee's Deed Upon Sale, and the court's minute order sustaining their demurrer to the amended complaint. Wells Fargo and U.S. Bank also asked the court to judicially notice the second amended complaint, deed of trust, documents from the State Controller and Secretary of State confirming the merger between Wells Fargo Home Mortgage, Inc., and Wells Fargo, documents from the Texas Secretary of State showing Loanstar's name change, the minute orders sustaining the demurrers to the amended complaint, the order dismissing the Kalnokis' federal claim, and a list of licensees that were exempt from Civil Code former section 2923.52, subdivision (a), obtained from the California Secretary of State's website.

After granting defendants' respective requests for judicial notice, the court sustained the demurrers without leave to amend. The Kalnokis moved for reconsideration and for leave to file a proposed third amended complaint. The proposed third amended complaint had ballooned to 116 pages, consisting of 752 separate paragraphs and 13 causes of action. Because the Kalnokis failed to precisely identify the allegations intended to be deleted and added to the proposed third amended complaint as required by court rules, the court denied the motion.

The court entered a judgment of dismissal with prejudice in favor of defendants FATCO and Loanstar on January 25, 2013. A separate judgment of dismissal with prejudice in favor of defendants Wells Fargo and U.S. Bank was entered on February 19, 2013. The Kalnokis appealed both judgments (the foreclosure appeal or case No. C073207). They also filed two motions for sanctions against defendants' counsel for purportedly relying on "perjured" foreclosure documents and "fraudulent" arguments in opposing the appeal.

### B. The Attorney Fees Appeal (Case No. C075062)

Following the entry of judgment, Wells Fargo and U.S. Bank moved for attorney fees based on provisions in the deed of trust and the accompanying promissory note. They sought $31,570 in fees. The Kalnokis opposed the motion, generally rehashing the arguments on the demurrers and also asserting that attorney fees were improper because there was no privity of contract between themselves and defendants, they did not assert any contract causes of action, and that the promissory note and deed of trust might not be true and correct copies of the originals. The court rejected their arguments and granted the motion, but reduced the requested amount to $14,500.

The Kalnokis appealed the order granting attorney fees (the attorney fees appeal or case No. C075062). In that appeal, the Kalnokis filed a motion for sanctions against defense counsel, which the court denied. (See motion for sanctions in the attorney fees appeal, filed Mar. 4, 2014; see also order denying motion for sanctions dated Mar. 27, 2014.) The Kalnokis then filed another motion for sanctions contending that because defendants' underlying motion for attorney fees was purportedly frivolous, their brief on appeal was "fraudulent and criminal" thus warranting sanctions.

### C. The Rental Disbursement Appeal (Case No. C079144)

After the judgments of dismissal were entered, Wells Fargo and U.S. Bank moved to sever the unlawful detainer action from the wrongful foreclosure action. Over the Kalnokis' objections, the court granted the motion. U.S. Bank then moved for summary judgment in the unlawful detainer action. The court granted the motion and awarded possession of the property to U.S. Bank. The unlawful detainer judgment includes the following notation: "The plaintiff waives all monetary damages."

The Kalnokis appealed the unlawful detainer judgment in the appellate division of the superior court. The judgment was affirmed. Following remittitur, the superior court appellate decision was deemed final.

The Kalnokis then filed a petition for writ of mandate in this court seeking to set aside the unlawful detainer judgment and the order granting summary judgment in favor of U.S. Bank. The petition was denied.

In January 2015, Wells Fargo and U.S. Bank moved the trial court to disburse the $40,950 the Kalnokis had deposited with the court under Code of Civil Procedure section 1170.5 to delay the pending unlawful detainer action. The Kalnokis opposed the motion, generally reasserting their demurrer arguments and also claiming that U.S. Bank voluntarily waived any right to

damages in the unlawful detainer judgment. They also asked the court to distribute the $40,950 to them. The court granted Wells Fargo and U.S. Bank's motion to disburse, and ordered that the funds be immediately disbursed to Wells Fargo through its counsel. The Kalnokis appealed (the rental disbursement appeal or case No. C079144).

All three appeals have been consolidated for argument and decision. The Kalnokis' three remaining sanction motions have also been consolidated for decision.

DISCUSSION

I–IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V

*Fraud*

■ The Kalnokis' second amended complaint alleges four separate fraud causes of action, one against each defendant. To withstand demurrer, facts constituting every element of fraud must be alleged with particularity. ■ The elements of fraud are a false representation of a material fact, knowledge of the falsity, intent to induce another to rely on the representation, reliance, and resulting damages. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792 [154 Cal.Rptr.3d 285]; *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157 [2 Cal.Rptr.2d 861].) ■ To assert a cause of action for fraud against a corporation, a plaintiff must allege the name of the person who allegedly made the fraudulent representation, his or her authority to speak, to whom he or she spoke, what was said and when it was said. (*Tarmann*, at p. 157.) General or conclusory allegations will not suffice to plead a cause of action for fraud. (*West*, at p. 793.)

On appeal, the Kalnokis characterize their fraud causes of action as predicated upon "documentary fraud." Although rife with inflammatory rhetoric and conclusory allegations, the gist of the second amended complaint is that all of the documents related to the foreclosure process are fraudulent and invalid.

---

*See footnote, *ante*, page 23.

## A. *The Substitution of Trustee*

The Kalnokis first allege the Substitution to Loanstar is invalid because Wells Fargo was merely the loan servicer and not the true beneficiary of the deed of trust when it executed the Substitution through FATCO as its attorney in fact. They contend that as the loan servicer Wells Fargo had no authority to substitute Loanstar as trustee. And because Loanstar was not properly substituted, all subsequent acts as the purported trustee were tainted thereby rendering the foreclosure proceedings invalid.

The Kalnokis' second amended complaint appears to posit two theories for the allegation that Wells Fargo was not the beneficiary of the deed of trust when it made the Substitution. The Kalnokis first allege that telephone operators for Wells Fargo told them that the deed of trust was owned by EMC Mortgage Corporation and that Wells Fargo was merely the loan servicer. Notably, in the original version of the complaint, the Kalnokis alleged that the telephone operators with whom they spoke had no knowledge of their case, nor any authority to discuss modification of their loan. The second amended complaint contains similar allegations that the telephone operators were unqualified to discuss information pertaining to their delinquent loan.

Next, the Kalnokis contend Wells Fargo did not succeed to the rights and interests of Wells Fargo Home Mortgage, Inc., as the initial beneficiary of the deed of trust following the merger of the two companies.

In their briefing, the Kalnokis now attempt to assert a third theory, not alleged in the second amended complaint, that the true owner of the deed of trust is actually Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR3 (Wells Fargo Asset Securities Trust), which was purportedly controlled by Freddie Mac (Federal Home Loan Mortgage Corporation). They claim that the collateral term sheets and the 1099A tax form "conclusively" prove Wells Fargo Asset Securities Trust is the true owner of their property.

█ Based on the publicly recorded documents, however, the trial court concluded Wells Fargo was the beneficiary under the deed of trust when it executed the challenged Substitution. The court found that the exhibits attached to the second amended complaint contradicted the Kalnokis' allegation that Wells Fargo was not the beneficiary of the deed of trust.

The deed of trust specifically identifies the original beneficiary as Wells Fargo Home Mortgage, Inc. As a legally operative document designating the beneficiary (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 266 [129 Cal.Rptr.3d 467] (*Fontenot*) [court did not err in taking judicial notice of fact that Mortgage Electronic Registration Systems, Inc., was the

beneficiary of the first deed of trust]), the identity of Wells Fargo Home Mortgage, Inc., as the original beneficiary is not reasonably subject to dispute. The Kalnokis also alleged Wells Fargo Home Mortgage, Inc., was the beneficiary under the deed of trust.

The Substitution substitutes Loanstar as trustee in place of Fidelity. The text of the Substitution identifies Wells Fargo Home Mortgage, Inc., as the original beneficiary and Wells Fargo as the present beneficiary. The signature block on the Substitution, however, recites that Wells Fargo is the "successor by merger" to *Wells Fargo Home Mortgage*, and not *Wells Fargo Home Mortgage, Inc.* While the Kalnokis claim the omission of the word "Inc." after the words "Wells Fargo Home Mortgage" from the signature block invalidates the Substitution, we disagree.

Under the circumstances, it appears omitting the word "Inc." from the signature block was obviously a mere inadvertence or typographical error that was not material and did not affect the validity of the Substitution. (*Domino v. Mobley* (1956) 144 Cal.App.2d 24, 29 [300 P.2d 324] (*Domino*) [uncertainty from obvious typographical error regarding amount of note in an escrow instruction contract could be resolved by extrinsic evidence].) Notably, the signature block on the Assignment, executed only two months later, states: "Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Home Mortgage, Inc., By First American Title Insurance Company, Its Attorney in Fact, as Beneficiary."

And the Kalnokis themselves concede Wells Fargo Home Mortgage is only a fictitious name under which Wells Fargo conducted business, and that a "merger" between Wells Fargo and its fictitious name is legally impossible. Moreover, the fact of the merger between Wells Fargo and *Wells Fargo Home Mortgage, Inc.*, and the legal effect of that merger, were supplied by other documents of which the court properly took judicial notice. (Evid. Code, § 452, subds. (c), (h); *Domino, supra,* 144 Cal.App.2d at p. 29.)

Official records from the comptroller of the currency and the California Secretary of State established that Wells Fargo Home Mortgage, Inc., merged into defendant Wells Fargo in May 2004 and that Wells Fargo succeeded to all of its interests. (Evid. Code, § 452, subds. (c), (h); *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 755 [154 Cal.Rptr.3d 394] [trial court properly took judicial notice of legal effects of government order appointing a receiver for an insolvent bank and a purchase and assumption agreement transferring the insolvent bank's assets but not its liabilities to an acquiring bank].) Notably, paragraph 157 of the second amended complaint alleges Wells Fargo Home Mortgage, Inc., ceased to exist on or about May 8, 2004—the same date reflected in the merger documents which the court judicially noticed.

■ Under the National Bank Consolidation and Merger Act (12 U.S.C. 215 et seq.), the comptroller of the currency may be requested to approve a merger agreement reached between a national banking association or a state bank, and a national bank located within the same state. (12 U.S.C. § 215a(a)(4).) ■ If the comptroller of the currency approves the merger agreement, as occurred here, the charter of the receiving association controls, and the receiving association is responsible for the liabilities of the bank or association that was merged into the receiving association. (12 U.S.C. § 215a(a)(4).) The receiving association "shall be deemed to be the same corporation as each bank or banking association participating in the merger. All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests, . . . and all other rights and interests . . . in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger . . . ." (12 U.S.C. § 215a(e).) The merger agreement itself contains similar language, providing the legal effect of the merger was that "all the properties, rights, privileges, powers and franchises of [Wells Fargo Home Mortgage, Inc.,] shall vest in the Surviving Corporation [Wells Fargo] . . . ."

In May 2004, then, the comptroller of the currency had approved the merger between Wells Fargo Home Mortgage, Inc. and Wells Fargo, and the latter entity succeeded to the status of beneficiary of the deed of trust by operation of law and the approved merger agreement. (12 U.S.C. § 215a(e).) These legally operative documents provided the link found missing in *Herrera v. Deutsche Bank.* (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375 [127 Cal. Rptr.3d 362] [noting that the foreclosing bank had offered no evidence to establish that its predecessor bank had any interest in the deed of trust to assign to it].)

■ The Kalnokis' allegations in the second amended complaint that a telephone operator, who they also alleged had no "knowledge of the case" and was "unqualified," told them EMC Mortgage Corporation was the beneficiary or their belated contention that Wells Fargo Asset Securities Trust was the beneficiary conflict with the legal effect of the above judicially noticeable exhibits and documents in the public record. So, too, does their allegation that Wells Fargo did not succeed Wells Fargo Home Mortgage, Inc., as beneficiary following the merger of the two entities. In such circumstances, we may disregard the Kalnokis' conflicting allegations. (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447

[104 Cal.Rptr.2d 239] [facts appearing in attached exhibits control over contradictory factual allegations in operative complaint].)

■ As the beneficiary of the deed of trust, Wells Fargo was authorized to substitute Loanstar as trustee in place of Fidelity. "By statute the Legislature has permitted the beneficiary of a deed of trust to substitute, at any time, a new trustee for the existing trustee." (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 871 [97 Cal.Rptr.2d 255] (*Dimock*); see also Civ. Code, § 2934a, subd. (a)(1).)

Paragraph 24 of the deed of trust, moreover, partly provides: "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee, and Borrower, the book and page where this Security Instrument [the deed of trust] is recorded and the name and address of the successor trustee." Upon such a substitution, the successor trustee "succeed[s] to all the title, power and duties conferred upon the Trustee herein and by Applicable Law." Paragraph 24 finally provides that the above-described procedure for substitution of trustee "shall govern to the exclusion of all other provisions for substitution."

It is this latter sentence of paragraph 24 that the Kalnokis cite as another basis for challenging the Substitution's validity. In their view, Wells Fargo did not comply with the specific procedures set forth in paragraph 24 for substituting a new trustee because FATCO executed the Substitution as Wells Fargo's attorney in fact. They claim, without any citation to authority, that a power of attorney had to be attached to the Substitution before FATCO could execute the instrument on Wells Fargo's behalf.

■ The Kalnokis' urged interpretation of paragraph 24 is too narrow and disregards other provisions in the deed of trust, however. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 526 [132 Cal.Rptr.2d 151] ["courts must give a ' "reasonable and commonsense interpretation" ' of a contract consistent with the parties' apparent intent"]; Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].) Paragraph 16, for example, provides that the deed of trust shall be governed by, among other things, the "law of the jurisdiction in which the Property is located." In California, any action that may be done by a principal may also be done by the principal's agent unless the act specifically requires the principal's personal attention. (Civ. Code, § 2304.)

■ Here, paragraph 24's language neither prohibits the lender from acting through an agent nor expressly requires the lender's "personal attention" in executing the document. We decline to imply such a provision into the language of the deed of trust. (*Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 602 [106 Cal.Rptr.2d 1] [courts will not add a term to a contract about which the agreement is silent].) We also note that similar substitutions of trustee, executed by an agent on behalf of the beneficiary, have been found valid. (See, e.g., *Dimock, supra*, 81 Cal.App.4th at p. 872 [recognizing validity of a recorded substitution of trustee that was prepared by an agent acting on the beneficiary's behalf].) Thus, the fact that FATCO executed the Substitution on behalf of Wells Fargo is of no moment, and does not render the Substitution invalid.

■ Nor is it invalid because it lacks an attached power of attorney. Nowhere in the nonjudicial foreclosure statutes or the deed of trust does it require a beneficiary to provide copies of any power of attorney to the borrower. " 'California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute' " due to its comprehensive nature. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 [121 Cal.Rptr.3d 819].)

In *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 83 [161 Cal.Rptr.3d 500] (*Siliga*), disapproved on other grounds in *Yvanova, supra*, 62 Cal.4th at page 939, footnote 13, for example, the court rejected the borrower's argument that the lender's nominee required written authorization to assign the deed of trust and promissory note and there was no evidence that the nominee had such written authorization. The court found the argument amounted to "a preemptive claim seeking to require the foreclosing party to demonstrate in court its authority to initiate a foreclosure," which was invalid and subject to demurrer. (*Siliga, supra*, 219 Cal.App.4th at p. 84.) The Kalnokis' similar claim that there is no evidence that the beneficiary's agent had a written power of attorney authorizing it to substitute a trustee fails for the same reason.

■ Finally, the second amended complaint alleges the Substitution is invalid because Loanstar had a conflict of interest that prevented it from accepting the Substitution. They argue that because Loanstar may have been the agent for the beneficiary at one point, it could not later become the trustee under the deed of trust. In a related argument, their opening brief also asserts that Loanstar as trustee owed them certain fiduciary duties. The trustee of a deed of trust, however, "is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary." (*Yvanova, supra*, 62 Cal.4th at p. 927.) Thus, no conflict of interest prevented Loanstar from accepting the Substitution, and Loanstar did not have any fiduciary duties to the Kalnokis during the foreclosure process.

## B. *The Assignment*

 The Kalnokis challenged the validity of the Assignment to U.S. Bank on several grounds. First, as with the Substitution, they claim the Assignment was ineffective because Wells Fargo was not the beneficiary of the deed of trust when the Assignment was made. Second, they allege the Assignment was fraudulent because neither Wells Fargo nor U.S. Bank ever held the promissory note the deed of trust secured. They also alleged that the Bear Stearns securitized trust had already closed when Wells Fargo assigned the deed of trust and note to U.S. Bank as trustee for the securitized trust. In other words, they allege the securitization process failed. Finally, without any citation to the record, they contend in their reply brief that the Assignment was executed by an employee of Loanstar and not FATCO as the attorney in fact for Wells Fargo. We disregard this last contention. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 60 [163 Cal.Rptr.3d 804] [court may decline to consider passage of brief that fails to comply with rule 8.204 of the Cal. Rules of Court, which requires citations to the record to support arguments and factual assertions].)

Having found that the first argument that Wells Fargo was not the beneficiary of the deed of trust lacked merit, we turn to the Kalnokis' second contention that the promissory note was never endorsed or delivered and thus never properly assigned to Wells Fargo or U.S. Bank. They cite *Saxon Mortgage Services, Inc. v. Hillery* (N.D.Cal., Dec. 9, 2008, No. C-08-4357 EMC) 2008 WL 5170180, page *5 (*Saxon*), an unpublished federal decision that found an assignment of a deed of trust and note to a third party from the lender's nominee in the deed of trust did not give the party standing to assert a claim to enforce the note in the bankruptcy court because no evidence showed the lender ever assigned the note to the nominee or gave it authority to assign the note to another party.

*Saxon* is distinguishable from the present case where the assets of the original lender and beneficiary, Wells Fargo Home Mortgage, Inc., were acquired by Wells Fargo through the merger approved by the comptroller of the currency. (12 U.S.C. § 215a(e) ["The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests, . . . and all other rights and interests . . . , in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger . . . ."].) Wells Fargo, in turn, transferred all its interest in both the deed of trust *and* the promissory note to U.S. Bank. The Assignment provides in relevant part: Wells Fargo "grants, assigns, and transfers to: [U.S. Bank] all beneficial interest under that certain Deed of Trust dated: 02/10/2004 executed by ANDREW G. KALNOKI AND KATHI L. KALNOKI . . . together

with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust."

██ To the extent the Kalnokis claim Wells Fargo and U.S. Bank had to physically possess the promissory note to foreclose, other courts have rejected such argument. (See, e.g., *Siliga, supra,* 219 Cal.App.4th at p. 84, fn. 5, disapproved on other grounds in *Yvanova, supra,* 62 Cal.4th at p. 939, fn. 13 [there is no legal basis for the claim that the foreclosing party must possess the original note]; *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 511 [149 Cal.Rptr.3d 749] [rejecting claim that defendants had no right to foreclose because they were not the " 'holder in due course' " of the promissory note]; *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 441 [138 Cal.Rptr.3d 830] [provisions of Cal. U. Com. Code pertaining to negotiable instruments do not "displace the detailed, specific, and comprehensive set of legislative procedures the Legislature has established for nonjudicial foreclosures"].) In *Jenkins v. JPMorgan Chase Bank N.A.* (2013) 216 Cal.App.4th 497, 510, 513 [156 Cal.Rptr.3d 912], disapproved on other grounds in *Yvanova, supra,* 62 Cal.4th at page 939, footnote 13, for example, the plaintiff complained that the trustee did not have actual physical possession of the note and deed of trust prior to the closing date of the investment trust, but the appellate court held that the nonjudicial foreclosure provisions did not require the foreclosing party to have an actual beneficial interest in the deed of trust and promissory note to commence and execute a nonjudicial foreclosure sale.

The Kalnokis' next contention—that the Assignment is void due to a securitization fail under New York law, which they allege governs the Bear Stearns securitized trust—is likewise without merit. According to the Kalnokis, the Bear Stearns securitized trust closed on February 28, 2005. Wells Fargo did not execute the Assignment to U.S. Bank as trustee for the Bear Stearns securitized trust until June 16, 2010. By that time, the Kalnokis' mortgage was in default. Because the securitized trust had already closed when it was assigned their delinquent mortgage, the Kalnokis allege that the Assignment violated the terms of the Bear Stearns securitized trust's pooling and servicing agreement, did not convey any interest to U.S. Bank, and violated the real estate mortgage investment conduit guidelines under the tax code. All of this, they claim, renders the Assignment void.

██ The trial court found the Kalnokis lacked standing to raise this issue since they were not parties to the securitized trust's pooling and servicing agreement. The California Supreme Court, however, recently held that a borrower has standing to sue for wrongful foreclosure where an alleged defect in the assignment renders the assignment void even if a borrower is not a party to the assignment. (*Yvanova, supra,* 62 Cal.4th at pp. 942–943.)

The Supreme Court expressed no opinion as to whether, under New York law, an untimely assignment to a securitized trust made after the trust's closing date is void or merely voidable. (*Id.* at pp. 940–941.) We turn to that issue now.

The Kalnokis rely on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 [160 Cal.Rptr.3d 449] (*Glaski*) for the proposition that an assignment of a deed of trust to a securitized trust governed by New York law that is made after the trust's closing date is void. (*Glaski*, at pp. 1083, 1097.) Like in *Glaski*, they cite New York Estates, Powers and Trusts Law section 7-2.4, which provides that "[i]f the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." The *Glaski* court read literally the term "void" in section 7-2.4, to hold that the plaintiff had standing to challenge violations of the pooling and servicing agreement. (*Glaski*, at pp. 1096–1097.)

As *Glaski* noted, however, its holding was at odds with numerous decisions finding that a plaintiff lacks standing to challenge the validity of the securitization process because any alleged irregularities merely render such an assignment voidable not void. (*Glaski, supra,* 218 Cal.App.4th at pp. 1096–1097.) The trial court decision upon which *Glaski* relied has also since been overturned. (*Wells Fargo Bank, N.A. v. Erobobo* (N.Y.App.Div. 2015) 127 A.D.3d 1176, 1178 [9 N.Y.S.3d 312].)

■ We decline to follow *Glaski* and instead conclude that an assignment to a securitized trust made after the trust's closing date is merely voidable. As a recent New York appellate court concluded: "the weight of New York authority is contrary to plaintiffs' contention that any failure to comply with the terms of the PSAs [pooling and services agreements] rendered defendants' acquisition of plaintiffs' loans and mortgages void as a matter of trust law." (*Rajamin v. Deutsche Bank National Trust Co.* (2d Cir. 2014) 757 F.3d 79, 88–89 (*Rajamin*).) Instead, "an unauthorized act by the trustee is not void but merely voidable by the beneficiary." (*Id.* at p. 89.)

Because any alleged irregularities in the securitization process are merely voidable at the securitized trust beneficiary's behest, and the Kalnokis are not beneficiaries of the Bear Stearns securitized trust, they lack standing to challenge the Assignment on such grounds. (*Rajamin, supra,* 757 F.3d at pp. 88–89.) Thus, even if we assume the truth of the Kalnokis' allegations regarding the purported securitization fail, such allegations are insufficient to set aside the foreclosure. (See *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 815, fn. 5 [199 Cal.Rptr.3d 790] (*Saterbak*) [declining to follow *Glaski* on similar grounds].)

■ Finally, the Kalnokis' contention in their reply brief that an employee of Loanstar, rather than FATCO, executed the Assignment on Wells Fargo's behalf is unavailing. The Kalnokis' cite no evidence in the record to support this argument. We therefore disregard it. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [85 Cal.Rptr.2d 521] ["If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived"]; *Fox v. Erickson* (1950) 99 Cal.App.2d 740, 742 [222 P.2d 452] [counsel has duty to refer reviewing court to portion of record to which he objects].) We briefly note, however, that elsewhere the Kalnokis allege Loanstar was Wells Fargo's agent. Thus, we fail to see the harm of an employee of Wells Fargo's admitted agent executing the Assignment.

### C. *The Notice of Sale*

■ The Kalnokis contend the Notice of Sale was fraudulent because the Assignment to U.S. Bank was invalid. In their view, U.S. Bank never received any interest in the Kalnokis' deed of trust or promissory note, and, therefore, U.S. Bank had no authority to foreclose. But, as discussed above, the Kalnokis have failed to allege any viable theory as to why the Assignment to U.S. Bank is void. As the current beneficiary of record of the deed of trust following the Assignment, U.S. Bank was authorized to demand the trustee foreclose on the Kalnokis' property. (*Yvanova, supra,* 62 Cal.4th at p. 926 [" 'If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale' "].)

They also challenge the validity of the declaration of Marsha Graham, which is attached to the Notice of Sale. The declaration provides that Wells Fargo Home Mortgage, Inc., had obtained an exemption under Civil Code former section 2923.53 from California's required 90-day wait period between issuing the notice of default and the notice of trustee's sale under Civil Code former section 2923.52. (Civ. Code, former § 2923.52, repealed by Stats. 2009, 2d Ex. Sess. 2009–2010, ch. 5, § 3, operative Jan. 1, 2011.) They contend that a defunct company like Wells Fargo Home Mortgage, Inc., could not obtain such an exemption. Even if that is true, the record shows Wells Fargo was similarly exempt.

### D. *The Trustee's Deed upon Sale*

The Kalnokis allege the Trustee's Deed Upon Sale is invalid because U.S. Bank was not the beneficiary under the Assignment, an argument we have already rejected, and also because U.S. Bank did not pay anything for the property at the trustee's sale. They also allege, without elaboration, that the Trustee's Deed Upon Sale falsely states that all of the requirements of Civil Code section 2924 were fully met.

■ "At a nonjudicial foreclosure sale, if the lender chooses to bid, it does so in the capacity of a purchaser. [Citation.] The only distinction between the lender and any other bidder is that the lender is not required to pay cash, but is entitled to make a credit bid up to the amount of the outstanding indebtedness. [Citations.] The purpose of this entitlement is to avoid the inefficiency of requiring the lender to tender cash which would only be immediately returned to it." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1238 [44 Cal.Rptr.2d 352, 900 P.2d 601] (*Alliance Mortgage*).)

"A 'full credit bid' is a bid 'in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure.' " (*Alliance Mortgage, supra,* 10 Cal.4th at p. 1238.) "If the full credit bid is successful, i.e., results in the acquisition of the property, the lender pays the full outstanding balance of the debt and costs of foreclosure to itself and takes title to the security property, releasing the borrower from further obligations under the defaulted note." (*Ibid.*)

As the beneficiary of the deed of trust and the promissory note following the Assignment, U.S. Bank was entitled to make a credit bid at the trustee's sale up to the amount of the debt owed. (*Alliance Mortgage, supra,* 10 Cal.4th at p. 1238.) The total amount of the unpaid debt together with costs was $437,280.54. That was the amount of U.S. Bank's credit bid. There was nothing wrongful about U.S. Bank using a credit bid rather than paying cash at the sale.

■ The purchaser at a nonjudicial foreclosure sale generally "receives title under a trustee's deed free and clear of any right, title or interest of the trustor." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 831 [30 Cal.Rptr.2d 777] (*Moeller*).) "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." (*Ibid.*)

In this case, the Trustee's Deed Upon Sale recites that the statutory requirements under Civil Code section 2924 have been met. The deed specifically provides, "All requirements of law and the applicable Deed of Trust including, but not limited to those enumerated by Civil Code 2924 et. seq., regarding the mailing, publication, personal delivery and posting of the Notice of Default and Notice of Sale, as respectively appropriate, have been met." Beyond their conclusory allegation that the recital in the Trustee's Deed Upon Sale is false, the Kalnokis cite nothing to rebut the ordinary presumption that the sale was conducted regularly.

### E. The Notice of Default

The Kalnokis contend that the Notice of Default and its attached declaration are void and fail to comply with Civil Code section 2924 because they were purportedly robosigned. According to the second amended complaint, the declaration attached to the Notice of Default attesting that the statutory notice procedures under Civil Code section 2923.5 were followed was robosigned by John Kennarty, an employee of Wells Fargo, without his having read the contents of the declaration. They also claim that his signature was forged by someone claiming to be John Kennarty. The Kalnokis alleged in their complaint that Wells Fargo was fully aware of and affirmed Kennarty's actions as a robosigner.

 For purposes of the demurrers, we will accept as true the factual allegation that the default declaration was "robosigned." But the assumed facts that Kennarty signed the default declaration without reading the document or that someone else signed it on his behalf are not enough to set aside the foreclosure. (*Sandri v. Capitol One, N.A.* (N.D.Cal. 2013) 501 B.R. 369, 373–374.) " 'As to the robo-signer allegations, there does not appear to be anything about "robo-signing" the notice of default or the notice of substitution that makes them invalid or ineffective. Even if true, "robo-signing" does not have any bearing on the validity of the foreclosure process here.' " (*Id.* at p. 374.) That is because the Kalnokis do not dispute the accuracy of any of the salient facts, such as the amount owed or that their loan was in default.

The Kalnokis, moreover, allege that Kennarty was acting on behalf of the beneficiary—Wells Fargo—and that Wells Fargo was fully aware of its agent's actions. The Kalnokis even allege that Wells Fargo "affirmed them as proper." Thus, by their own allegations, the Kalnokis negate any inference that Wells Fargo did not authorize Kennarty or someone else to robosign the Notice of Default's supporting declaration.

And, to the extent the default declaration was in fact robosigned, "it would be voidable, not void, at the injured party's option." (See *Maynard v. Wells Fargo Bank, N.A.* (S.D.Cal., Sept. 11, 2013, No. 12cv1435 AJB (JMA)) 2013 WL 4883202, pp. *8–*9.) Here, the injured party would have been Wells Fargo, not the Kalnokis.

 Moreover, even assuming for sake of argument that Wells Fargo was not the beneficiary at the time it initiated the foreclosure proceedings as the Kalnokis allege, they nonetheless concede Wells Fargo was the loan servicer. As the loan servicer—the beneficiary's agent—Wells Fargo was empowered to proceed with foreclosure on the beneficiary's behalf by recording the Notice of Default. (Civ. Code, §§ 2924, subd. (a)(1) [trustee, mortgagee, or

beneficiary, or any of their authorized agents may file a notice of default to initiate foreclosure], 2304 [agent authorized to do any acts which principal may do].)

### F. Tender

In its ruling sustaining the joint demurrer of FATCO and Loanstar, the trial court determined the Kalnokis were required to tender the amount owing on the debt to maintain an action challenging the foreclosure sale. The Kalnokis contend this was error.

■■■ Generally, "as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 [134 Cal.Rptr.3d 622].) " 'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' " (*Ibid.*)

There are, however, recognized exceptions to the tender rule. (*Lona v. Citibank, N.A., supra,* 202 Cal.App.4th at p. 112.) Courts have found that tender is not required where the borrower attacks the validity of the underlying debt (*Stockton v. Newman* (1957) 148 Cal.App.2d 558, 564 [307 P.2d 56] [trustor sought rescission of the contract to purchase the property and the promissory note on grounds of fraud]), where the borrower has a counterclaim or setoff against the beneficiary (*Hauger v. Gates* (1954) 42 Cal.2d 752, 755 [269 P.2d 609] [plaintiff claimed setoff in an amount exceeding the amount due on the note where defendant had failed to deliver personal property under parties' agreement that was valued at an amount greater than installment payment owing on note]), where it would be inequitable to impose the requirement (*Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291 [119 P. 82] [inequitable to require widow to tender full amount of debt for which she was not liable in order to protect her homestead interest in property]), and where the trustee's deed is void on its face (*Dimock, supra,* 81 Cal.App.4th at pp. 877–878).

In this case, the Kalnokis admit in the second amended complaint that the underlying debt is valid. They also do not allege any entitlement to a setoff. Unlike in *Humboldt,* where the plaintiff did not owe the debt, we do not consider it "inequitable" to apply the tender rule here as the Kalnokis concede they owed the debt. Finally, apart from the Kalnokis' conclusory allegations, there is nothing on the face of the Trustee's Deed Upon Sale showing that it is void. The recorded documents attached as exhibits to the

second amended complaint as well as the merger documents subject to judicial notice establish an unbroken chain of ownership from Wells Fargo Home Mortgage, Inc., to Wells Fargo by merger, to U.S. Bank as trustee for the Bear Stearns securitized trust by assignment.

And, as discussed above, even assuming Wells Fargo assigned the deed of trust and promissory note to U.S. Bank after the Bear Stearns securitized trust closed, that fact makes the Assignment voidable rather than void. (*Rajamin, supra,* 757 F.3d at pp. 88–89; *Saterbak, supra,* 245 Cal.App.4th at p. 815, fn. 5.) Under such circumstances, the Kalnokis acknowledge tender is required. (Tender rule only applies to cases where the foreclosure sale is voidable.)

Because none of the exceptions to the tender rule apply, the trial court did not err in determining that the Kalnokis were required to tender the full amount of the debt owed before challenging the foreclosure sale. The allegations of the second amended complaint concede they did not tender the full amount, nor could they.

### G. Prejudice

The Kalnokis' challenge to the foreclosure sale also fails for a more fundamental reason. They cannot establish prejudice.

 " '[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests.' " (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507 [141 Cal.Rptr.3d 326] (*Herrera v. Federal National*), disapproved on other grounds in *Yvanova, supra,* 62 Cal.4th at pp. 929, fn. 4, 939 fn. 13.) "A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure *and the resulting prejudice.*' " (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86, fn. 4 [20 Cal.Rptr.3d 1], italics added.) " 'Prejudice is not presumed from "mere irregularities" in the process.' " (*Herrera v. Federal National, supra,* 205 Cal.App.4th at p. 1507.)

 Even if Wells Fargo lacked authority to assign the note and deed of trust to U.S. Bank as trustee for the Bear Stearns securitized trust, it is difficult to conceive how the Kalnokis were prejudiced by the Assignment. " 'Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor.' " (*Herrera v. Federal National, supra,* 205 Cal.App.4th at p. 1507; see *Fontenot, supra,* 198 Cal.App.4th at p. 272.)

An assignment merely substituted one creditor for another, without changing the Kalnokis' obligations under the note. The Kalnokis do not dispute that

they defaulted on their loan. They have pleaded no facts indicating that the foreclosure sale, which has already occurred, would have been averted but for the alleged deficiencies in the foreclosure process nor that the original lender would have refrained from foreclosure under the circumstances presented. Indeed, they concede in their briefing that whenever a loan is in default, like theirs, the trustee has only one duty—to foreclose on the deed of trust. Similarly, the Kalnokis have not alleged that the transfer to U.S. Bank interfered in any manner with their payment of the promissory note. (*Herrera v. Federal National, supra*, 205 Cal.App.4th at p. 1507; *Fontenot, supra*, 198 Cal.App.4th at p. 272.) Again, they concede they fell behind on their payments and did not have the ability to tender the full amount owing before the Assignment to U.S. Bank.

Although not entirely apparent from the briefs, it appears the Kalnokis' attempt to establish prejudice from the alleged irregularities in the foreclosure process by arguing they are exposed to double financial jeopardy. They claim Freddie Mac could sue them at a later time to collect on the promissory note, which secured the deed of trust. In support of their argument, they continue to contend that physical possession of the promissory note was required to foreclose.

■■■ "California has an elaborate and interrelated set of foreclosure and antideficiency statutes relating to the enforcement of obligations secured by interests in real property." (*Alliance Mortgage, supra*, 10 Cal.4th at p. 1236.) Pursuant to this exhaustive statutory scheme, "there is only 'one form of action' for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust." (*Ibid.*) That action is foreclosure. (*Ibid.*)

A nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. (*Moeller, supra*, 25 Cal.App.4th at p. 831.) After the property is sold at a nonjudicial foreclosure sale, the borrower is released from further obligations under the defaulted note. (*Alliance Mortgage, supra*, 10 Cal.4th at p. 1238; *Yvanaova, supra*, 62 Cal.4th at p. 927 ["Generally speaking, the foreclosure sale extinguishes the borrower's debt; the lender may recover no deficiency"].) Because the property has already been sold at a nonjudicial foreclosure sale, there is no risk of double jeopardy for the Kalnokis.

■■■ We recognize that our colleagues in Division One of the Fourth Appellate District recently held that "a homeowner who has been foreclosed on by one with no right to do so—by those facts alone—sustains prejudice or harm sufficient to constitute a cause of action for wrongful foreclosure." (*Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 555

[202 Cal.Rptr.3d 219] (*Sciarratta*).) Thus, contrary to *Herrera National* and *Fontenot*, the homeowner need not allege that the wrongful foreclosure interfered with his or her ability to pay on the debt or that the foreclosure otherwise would not have occurred. (*Id.* at pp. 555, 562–564.)

The plaintiff in *Sciarratta* sued to challenge Bank of America's foreclosure of her home. The complaint alleged that Chase assigned the homeowner's promissory note and deed of trust to Deutsche Bank in April 2009. Six months later, in November 2009, Chase recorded a purported assignment of the same trust deed and promissory note to Bank of America. The homeowner alleged the second purported assignment from Chase was void as it had nothing left to assign, and, thus, the foreclosure by Bank of America was wrongful. Because the wrong entity foreclosed, she alleged she was prejudiced. (*Sciarratta, supra*, 247 Cal.App.4th at p. 562.)

The court in *Sciarratta* found that publicly recorded documents properly subject to judicial notice were consistent with the complaint's allegations. (*Sciarratta, supra*, 247 Cal.App.4th at p. 562.) Here, by contrast, the publicly recorded documents conflict with the Kalnokis' contention in their second amended complaint, not pressed on appeal, that EMC Mortgage Corporation owned the promissory note and deed of trust, as well as their new allegation, not alleged in the second amended complaint, that Wells Fargo Asset Securities Trust owned the note and deed of trust. Thus, even assuming for sake of argument that prejudice can be established simply by alleging facts showing the wrong party foreclosed as found in *Sciarratta*, the judicially noticeable documents in this case show the proper party foreclosed notwithstanding the Kalnokis' conflicting allegations.

## VI–XVII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgments in case No. C073207 are affirmed. The attorney fees order in case No. C075062 is affirmed. The order in case No. C079144 disbursing the $40,950 plus accrued interest to Wells Fargo, which the Kalnokis deposited with the trial court pursuant to Code of Civil Procedure section

---

*See footnote, *ante*, page 23.

1170.5, is reversed; the court is directed to enter a new order disbursing the money to the Kalnokis. Each party shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

Blease, Acting P. J., and Duarte, J., concurred.

A petition for a rehearing was denied February 22, 2017, and appellants' petition for review by the Supreme Court was denied May 10, 2017, S240588.